Scott P. Shaw (SBN 223592)
SShaw@Merchantgould.com
MERCHANT & GOULD P.C.
8383 Wilshire Blvd., Suite 935
Beverly Hills, CA 90211
Telephone: (949) 330-0202

Brian J. Abergel (Admitted PHV)
Babergel@TPAlegal.com
PEACOCK, & ABERGEL, P.L.L.C.
304 South Harbor City Blvd. Ste 201
Melbourne, FL 32901
Telephone: (321) 255-5501

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LE VENTURES, LLC, a California limited liability company; NEVEN EYEWEAR, LLC, a Nevada limited liability company; KHOI LE, an individual,<br><br>        Plaintiffs,<br><br>        v.<br><br>JONATHAN STRAUSS, an individual; NEVEN EYEWEAR, LLC, a Florida limited liability company; NEVEN HOLDINGS, LLC, a Florida limited liability company, and DOES 1 through 10, inclusive,<br><br>        Defendants.<br><br>NEVEN EYEWEAR, LLC, a Florida limited liability company,<br><br>        Counterclaimant,<br><br>        v.<br><br>LE VENTURES, LLC, a California limited liability company; NEVEN EYEWEAR, LLC, a Nevada limited liability company; KHOI LE, an individual,<br><br>        Counter-Defendants. | Case No. 2:24-cv-7383-WLH-PD<br><br><br>**DEFENDANTS' ANSWER TO PLAINTIFFS' SECOND AMENDED COMPLAINT AND COUNTERCLAIMS** |

1

Defendants Jonathan Strauss, Neven Eyewear, LLC (FL) ("Neven FL"), Neven Holdings, LLC ("Neven Holdings") and Does 1 through 10 (collectively, "Defendants") file this Answer and Counterclaims in response to the Second Amended Complaint ("SAC") filed by Plaintiffs Le Ventures, LLC ("LV"), Neven Eyewear, LLC (NV) ("Neven NV"), and Khoi Le (collectively, "Plaintiffs").

## GENERAL DENIAL

Except as expressly admitted in this Answer, Defendants deny each and every allegation set forth in the SAC, including without limitation any allegations contained in the preamble, headings, subheadings, or footnotes of the SAC, and specifically deny any liability to Plaintiffs. Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, allegations in the SAC to which no responsive pleading is required shall be deemed to be denied. Defendants expressly reserve the right to seek to amend and/or supplement their Answer as may be necessary.

## RESPONSE TO SPECIFIC ALLEGATIONS

AND NOW, incorporating the foregoing, Defendants state as follows in response to the specific allegations in each of the numbered paragraphs of Plaintiffs' SAC:

## THE PARTIES

1. Defendants admit Plaintiff LV is a limited liability company existing under the laws of the State of California. Defendants are without information sufficient to admit or deny the remaining allegations in paragraph 1, and therefore deny same.

2. Defendants are without information sufficient to admit or deny the remaining allegations in paragraph 2, and therefore deny same.

3. Defendants are without information sufficient to admit or deny the allegations in paragraph 3, and therefore deny same.

4. Defendants admit Jonathan Strauss is a resident of the State of Florida and the sole owner and CEO of Neven FL. Defendants deny the remaining

allegations in paragraph 4.

5.     Defendants deny Neven FL maintains its principal place of business at 225 5th Avenue, Ste 1, Indialantic, Florida 32903. Defendants admit the remaining allegations in paragraph 5.

6.     Defendants admit the allegations in paragraph 6.

7.     Defendants deny the allegations in paragraph 7.

8.     Defendants admit that Plaintiffs' SAC names Does 1-10 as defendants to its action. Defendants deny that they or the other unnamed defendants in Plaintiffs' suit have committed any act complained of in the SAC and therefore deny the remaining allegations and characterizations in paragraph 8.

9.     Defendants admit Jonathan Strauss worked as an independent contractor for LV prior to March 12, 2024. Defendants deny the remaining allegations in paragraph 9.

10.    To the extent paragraph 10 of the SAC implicates legal conclusions, no response is required. To the extent that a response is required, Defendants deny the allegations in paragraph 10.

## JURISDICTION AND VENUE

11.    Defendants admit that subject matter jurisdiction is proper under the current allegations and for purposes of the current allegations only. Defendants deny any remaining allegations in paragraph 11.

12.    Defendants admit that subject matter jurisdiction is proper under the current allegations and for purposes of the current allegations only. Defendants deny any remaining allegations in paragraph 12.

13.    Defendants generally deny the allegations in paragraph 13, but Defendants are not disputing personal jurisdiction for purposes of this case.

14.    Defendants deny the allegations in paragraph 14.

15.    Defendants generally deny the allegations in paragraph 15, but Defendants are not disputing venue for purposes of this case.

**FACTS COMMON TO ALL COUNTS**

16.    Defendants admit LV is a California limited liability company and that Exhibit A to the SAC purports to be a copy of LV's articles of organization, which speak for itself. Defendants are without information sufficient to admit or deny the remaining allegations in paragraph 16, and therefore deny same.

17.    Defendants are without information sufficient to admit or deny the remaining allegations in paragraph 17, and therefore deny same.

18.    Defendants are without information sufficient to admit or deny the remaining allegations in paragraph 18, and therefore deny same.

19.    Defendants admit "ActiveCollab" is a system for managing work tasks and recording time. Defendants lack sufficient knowledge to admit or deny the remaining allegations in paragraph 19, and therefore deny same.

20.    Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 20, and therefore deny same.

21.    Defendants admit an online chat system called Slack exists and that it allows users to communicate with one another. Defendants deny the remaining allegations in paragraph 21.

22.    Defendants admit that Jonathan Strauss previously worked for Sell it Social, LLC d/b/a Rebel Circus ("Rebel Circus"), which parted ways with Mr. Strauss in 2015. Defendants also admit Rebel Circus filed a lawsuit against Mr. Strauss, which was later settled with no admission of liability. Defendants admit that Exhibit B purports to be a copy of the complaint Rebel Circus filed against Mr. Strauss, which speaks for itself. Defendants deny the remaining allegations in paragraph 22.

23.    Defendants admit Mr. Le hired Mr. Strauss to work as an independent contractor for LV. Defendants deny the remaining allegations in paragraph 23.

24.    Defendants admit Mr. Strauss is not a programmer. Defendants deny the remaining allegations in paragraph 24.

4

25.     Defendants admit Mr. Strauss has utilized the email address of jon@leventures.com. Defendants deny the remaining allegations in paragraph 25.

26.     Defendants admit Mr. Strauss was very proactive and oversaw many projects for LV. Defendants lack sufficient knowledge to admit or deny the remaining allegations in paragraph 26, and therefore deny same.

27.     Defendants admit Mr. Strauss formerly worked as an independent contractor for LV and that he executed an independent contractor agreement with LV. Defendants lack sufficient knowledge to admit or deny the remaining allegations in paragraph 27, and therefore deny same.

28.     Defendants lack sufficient knowledge to admit or deny the allegations in paragraph 28, and therefore deny same.

29.     Defendants admit Mr. Strauss formerly worked as an independent contractor for LV and that Exhibit C to the SAC purports to be a copy of the independent contractor agreement Mr. Strauss executed with LV (the "ICA"), which speaks for itself. Defendants lack sufficient knowledge to admit or deny the remaining allegations in paragraph 29, and therefore deny same.

30.     Defendants admit paragraph 30 purports to reproduce language from the ICA. Defendants deny the remaining allegations in paragraph 30.

31.     Defendants admit that Jonathan Muller was an independent contractor of LV. Defendants deny the remaining allegations in paragraph 31.

32.     Defendants admit Mr. Strauss formed an entity called Tribe Eyewear, LLC. Defendants deny the remaining allegations in paragraph 32.

33.     Defendants deny the allegations in paragraph 33.

34.     Defendants deny the allegations in paragraph 34.

35.     Defendants deny the allegations in paragraph 35.

36.     Defendants deny the allegations in paragraph 36.

37.     Defendants deny the allegations in paragraph 37.

38.     Defendants deny the allegations in paragraph 38.

39.    Defendants lack sufficient knowledge to admit or deny the remaining allegations in paragraph 39, and therefore deny same.

40.    Defendants deny the allegations in paragraph 40.

41.    Defendants deny the allegations in paragraph 41.

42.    Defendants admit that Mr. Strauss owned and transferred the Neven FL Shopify account to his jon@neveneyewear.com email. Defendants deny the remaining allegations in paragraph 42.

43.    Defendants admit Mr. Strauss linked the Shopify account, website, and bank account he owned to Neven FL and its EIN. Defendants deny the remaining allegations of paragraph 43.

44.    Defendants admit that Masha Miucin was an independent contractor of LV who worked on the NEVEN logo, but Defendants deny the remaining allegations in paragraph 44.

45.    Defendants admit the allegations in paragraph 45.

46.    Defendants deny the allegations in paragraph 46.

47.    Defendants deny the allegations in paragraph 47.

48.    Defendants deny the allegations in paragraph 48.

49.    Defendants deny the allegations in paragraph 49.

50.    Defendants deny the allegations in paragraph 50.

51.    Defendants admit Mr. Strauss retained the services of Gene Bolmarcich. Defendants deny the remaining allegations in paragraph 51.

52.    Defendants admit the allegations in paragraph 52.

53.    Defendants admit the allegations in paragraph 53 and that Exhibit H to the SAC, which purports to be a USPTO Trademark Status & Document Retrieval printout for the trademark having U.S. Reg. No. 6,330,350, speaks for itself.

54.    Defendants admit the allegations in paragraph 54.

55.    Defendants admit the allegations in paragraph 55.

56.    Defendants admit Tribe Eyewear, LLC was the original owner of the

trademark having U.S. Reg. No. 6,330,350. Defendants deny the remaining allegations in paragraph 56.

57.    Defendants deny the allegations in paragraph 57.

58.    Defendants deny the allegations in paragraph 58.

59.    Defendants admit Strauss exchanged written communications with Nichole Ellis in September 2021. Defendants deny the remaining allegations in paragraph 59.

60.    Defendants admit Exhibit I to the SAC purports to be a copy of email communications with Gene Bolmarcich, which speak for themselves. Defendants deny the remaining allegations in paragraph 60.

61.    Defendants deny the allegations in paragraph 61.

62.    Defendants deny the allegations in paragraph 62.

63.    Defendants admit Exhibit L to the SAC purports to be a copy of the USPTO Trademark Status & Document Retrieval printout for the trademark having U.S. Reg. No. 6,883,673, which speaks for itself. Defendants deny the remaining allegations in paragraph 63.

64.    Defendants admit Exhibit M to the SAC purports to be a copy of a letter sent by attorney Tyler Q. Dahl, which speaks for itself. Defendants deny the remaining allegations in paragraph 64.

65.    Defendants deny the allegations in paragraph 65.

66.    Defendants deny the allegations in paragraph 66.

67.    Defendants admit Neven FL started generating revenue in 2022. Defendants deny the remaining allegations of paragraph 67.

68.    Defendants deny the allegations in paragraph 68.

69.    Defendants admit LV leased an office space in Indialantic, Florida and that Neven FL paid rent to LV for the same. Defendants deny the remaining allegations in paragraph 69.

70.    Defendants admit LV contractors worked at the office in Indialantic,

Florida. Defendants are without information sufficient to admit or deny the remaining allegations in paragraph 70, and therefore deny same.

71.    Defendants deny the allegations in paragraph 71, except the allegation that the sales revenue increased in 2023.

72.    Defendants admit Mr. Strauss and Mr. Le had discussions regarding Mr. Le's inability to pay Mr. Strauss for work Mr. Strauss performed on behalf of LV, and that Mr. Strauss started paying himself from Neven FL's profits to offset the income he was no longer receiving from LV. Defendants also admit that Mr. Strauss worked for LV unpaid. Defendants deny the remaining allegations in paragraph 72.

73.    Defendants are without information sufficient to admit or deny the allegations in paragraph 73, and therefore deny same.

74.    Defendants admit Exhibit N to the SAC, which purports to be a copy of written communications between Mr. Strauss and Mr. Le, speaks for itself. Defendants deny the remaining allegations in paragraph 74.

75.    Defendants admit Mr. Strauss organized Neven Holdings under the laws of the State of Florida for the purpose of owning real estate and that Exhibit O to the SAC, which purports to be a copy of the Articles of Organization for Neven Holdings, speaks for itself. Defendants deny the remaining allegations paragraph 75.

76.    Defendants admit Exhibit P, which purports to be a record of written correspondence between Mr. Le and Mercury Bank, speaks for itself. Defendants deny the remaining allegations in paragraph 76.

77.    Defendants admit the allegations in paragraph 77.

78.    Defendants admit Mr. Le and Mr. Strauss exchanged written communications via Slack on December 29, 2023. Defendants deny the remaining allegations in paragraph 78.

79.    Defendants admit the allegations in paragraph 79 and Exhibit Q to the SAC, which purports to be a copy of communications between Mr. Le and Mr.

8

Strauss, speaks for itself.

80.     Defendants admit Exhibit R to the SAC, which purports to be a record of written communications between Mr. Le and Mr. Strauss, speaks for itself. Defendants deny the remaining allegations in paragraph 80.

81.     Defendants admit that Exhibit S to the SAC, which purports to be a record of written communications between Mr. Le and Mr. Strauss, speaks for itself. Defendants deny the remaining allegations in paragraph 81.

82.     Defendants admit that Exhibit T to the SAC, which purports to be a record of written communications between Mr. Le and Mr. Strauss, speaks for itself. Defendants deny the remaining allegations in paragraph 82.

83.     Defendants admit that Exhibit T to the SAC, which purports to be a record of written communications between Mr. Le and Mr. Strauss, speaks for itself. Defendants deny the remaining allegations in paragraph 83.

84.     Defendants deny the allegations in paragraph 84.

85.     Defendants admit Exhibit H to the SAC, which purports to be a USPTO Trademark Status & Document Retrieval printout for the trademark having U.S. Reg. No. 6,330,350, speaks for itself. Defendants deny the remaining allegations in paragraph 85.

86.     Defendants deny the allegations in paragraph 86.

87.     Defendants admit the allegations in paragraph 87.

88.     Defendants admit Mr. Strauss properly transferred funds from the Mercury Bank account to make mortgage payments for the building owned by Neven Holdings. Defendants deny the remaining allegations in paragraph 88.

89.     Defendants admit Neven FL filed trademark applications for trademarks associated with his NEVEN brand. Defendants deny the remaining allegations in paragraph 89.

90.     Defendants admit Exhibit W of the SAC, which purports to be a copy of the USPTO Trademark Status & Document Retrieval printout for the trademark

9

application having U.S. Serial No. 97,802,512, speaks for itself. Defendants deny the remaining allegations in paragraph 90.

91. Defendants admit Exhibit X of the SAC, which purports to be a copy of the USPTO Trademark Status & Document Retrieval printout for the trademark application having U.S. Serial No. 97,865,331, speaks for itself. Defendants deny the remaining allegations in paragraph 91.

92. Defendants admit Exhibit Y of the SAC, which purports to be a copy of the USPTO Trademark Status & Document Retrieval printout for the trademark application having U.S. Serial No. 98,528,994, speaks for itself. Defendants deny the remaining allegations in paragraph 92.

93. Defendants admit that Neven FL submitted a trademark application to the USPTO for registration of the NEVEN EYEWEAR mark. Defendants deny the remaining allegations in paragraph 93.

94. Defendants admit Exhibit Z of the SAC, which purports to be a copy of the USPTO Trademark Status & Document Retrieval printout for the trademark application having U.S. Serial No. 98,529,003, speaks for itself. Defendants deny the remaining allegations in paragraph 94.

95. Defendants admit that Neven FL submitted a trademark application to the USPTO for U.S. Serial No. 98,529,003.

96. Defendants admit Exhibit AA of the SAC, which purports to be a copy of the USPTO Trademark Status & Document Retrieval printout for the trademark application having U.S. Serial No. 98,529,033, speaks for itself. Defendants deny the remaining allegations in paragraph 96.

97. Defendants admit Exhibit BB of the SAC, which purports to be a copy of the USPTO Trademark Status & Document Retrieval printout for the trademark application having U.S. Serial No. 98,529,047, speaks for itself. Defendants deny the remaining allegations in paragraph 97.

98. Defendants deny the allegations in paragraph 98.

99.    Defendants admit the allegations in paragraph 99.

100.    Defendants admit Exhibit CC2 of the SAC, which purports to be a copy of an amended complaint, speaks for itself.

101.    Defendants admit Exhibit DD of the SAC, which purports to be a copy of a Florida complaint, speaks for itself. Defendants further admit that they dismissed the case.

102.    Defendants admit Exhibit EE of the SAC, which purports to be a copy of a cease-and-desist letter, speaks for itself.

103.    Defendants admit Neven FL filed case no. 6:24-cv-01204 in the Middle District of Florida and that it was subsequently dismissed. Defendants deny the remaining allegations of paragraph 103.

104.    Defendants deny the allegations in paragraph 104.

105.    Defendants deny the allegations in paragraph 105.

106.    Defendants deny the allegations in paragraph 106.

## COUNT I

## BREACH OF CONTRACT

107.    Defendants reallege and incorporate their responses to the preceding paragraphs 1–106 by reference.

108.    Defendants admit the allegations in paragraph 108.

109.    Defendants deny the allegations in paragraph 109.

110.    Defendants deny the allegations in paragraph 110.

111.    Defendants deny the allegations in paragraph 111.

112.    Defendants deny the allegations in paragraph 112.

113.    Defendants deny the allegations in paragraph 113.

114.    Defendants deny the allegations in paragraph 114.

## COUNT II

### CONVERSION

(By LV against All Defendants)

115. Defendants reallege and incorporate their responses to the preceding paragraphs 1–114 by reference.

116. Defendants deny the allegations in paragraph 116.

117. Defendants deny the allegations in paragraph 117.

118. Defendants deny the allegations in paragraph 118.

119. Defendants deny the allegations in paragraph 119.

120. Defendants deny the allegations in paragraph 120.

121. Defendants deny the allegations in paragraph 121.

122. Defendants deny the allegations in paragraph 122.

123. Defendants deny the allegations in paragraph 123.

124. Defendants deny the allegations in paragraph 124.

125. Defendants deny the allegations in paragraph 125.

126. Defendants deny the allegations in paragraph 126.

127. Defendants deny the allegations in paragraph 127.

128. Defendants deny the allegations in paragraph 128.

## COUNT III

### CONVERSION

(By Le against Strauss)

129. Defendants reallege and incorporate their responses to the preceding paragraphs 1–128 by reference.

130. Defendants deny the allegations in paragraph 130.

131. Defendants deny the allegations in paragraph 131.

132. Defendants deny the allegations in paragraph 132.

133. Defendants deny the allegations in paragraph 133.

134. Defendants deny the allegations in paragraph 134.

12

135. Defendants deny the allegations in paragraph 135.

136. Defendants deny the allegations in paragraph 136.

137. Defendants deny the allegations in paragraph 137.

## COUNT IV

### FRAUD

(By LV against Strauss)

138. Defendants reallege and incorporate their responses to the preceding paragraphs 1–137 by reference.

139. Defendants admit that Mr. Strauss had certain responsibilities while he worked as an independent contractor for LV. Defendants deny the remaining allegations in paragraph 139.

140. Defendants deny the allegations in paragraph 140.

141. Defendants admit Mr. Strauss and Mr. Le exchanged written communications via Slack on May 9, 2023, and that those communications speak for themselves. Defendants deny the remaining allegations in paragraph 141.

142. Defendants deny the allegations in paragraph 142.

143. Defendants deny the allegations in paragraph 143.

144. Defendants deny the allegations in paragraph 144.

145. Defendants deny the allegations in paragraph 145.

146. Defendants deny the allegations in paragraph 146.

147. Defendants deny the allegations in paragraph 147.

148. Defendants deny the allegations in paragraph 148.

149. Defendants admit Strauss never transferred ownership of Neven FL to LV and never transferred any trademarks or assets to any of the Plaintiffs or their affiliates and subsidiaries. Defendants deny the remaining allegations in paragraph 149.

150. Defendants deny the allegations in paragraph 150.

## COUNT V

## REASSIGNMENT OR CANCELLATION OF U.S. TRADEMARK REG.

## NO. 6,330,350

(by LV and Neven NV against Neven FL)

151. Defendants reallege and incorporate their responses to the preceding paragraphs 1–150 by reference.

152. Defendants deny the allegations in paragraph 152.

153. Defendants deny the allegations in paragraph 153.

154. Defendants deny the allegations in paragraph 154.

155. Defendants deny the allegations in paragraph 155.

156. Defendants admit the ICA discusses intellectual property and speaks for itself. Defendants deny the remaining allegations in paragraph 156.

157. Defendants deny the allegations in paragraph 157.

158. Defendants deny the allegations in paragraph 158.

159. Defendants deny the allegations in paragraph 159.

160. Defendants deny the allegations in paragraph 160.

161. Defendants deny the allegations in paragraph 161.

162. Defendants deny the allegations in paragraph 162.

163. Defendants deny the allegations in paragraph 163.

164. Defendants deny the allegations in paragraph 164.

165. Defendants are without sufficient information to ascertain what "trademark application" the allegations in paragraph 165 relate to, and therefore deny same.

166. Defendants deny the allegations in paragraph 166.

167. Defendants deny the allegations in paragraph 167.

168. Defendants deny the allegations in paragraph 168.

## COUNT VI

### REASSIGNMENT OR CANCELLATION OF U.S. TRADEMARK APPLICATIONS NOS. 97,802,512, 97,865,331, 98,529,047, 98,529,033, 98,529,003, 98,528,994

(by LV and Neven NV against Neven FL)

169. Defendants reallege and incorporate their responses to the preceding paragraphs 1–168 by reference.

170. Defendants deny the allegations in paragraph 170.

171. Defendants deny the allegations in paragraph 171.

172. Defendants deny the allegations in paragraph 172.

173. Defendants deny the allegations in paragraph 173.

174. Defendants deny the allegations in paragraph 174.

175. Defendants deny the allegations in paragraph 175.

176. Defendants deny the allegations in paragraph 176.

177. Defendants deny the allegations in paragraph 177.

178. Defendants deny the allegations in paragraph 178.

179. Defendants deny the allegations in paragraph 179.

180. Defendants deny the allegations in paragraph 180.

181. Defendants deny the allegations in paragraph 181.

182. Defendants deny the allegations in paragraph 182.

## COUNT VII

### VIOLATION OF THE UNFAIR COMPETITION LAW, CAL. BUS. AND PROF. CODE §§ 17200, ET SEQ.

(by All Plaintiffs Against All Defendants)

183. Defendants reallege and incorporate their responses to preceding paragraphs 1–182 by reference.

184. Defendants deny the allegations in paragraph 184.

185. Defendants deny the allegations in paragraph 185.

15

186. Defendants deny the allegations in paragraph 186.

187. Defendants deny the allegations in paragraph 187.

188. Defendants deny the allegations in paragraph 188.

## COUNT VIII

## DECLARATORY JUDGMENT

(by LV against Neven FL)

189. Defendants reallege and incorporate their responses to preceding paragraphs 1–188 by reference.

190. Defendants deny the allegations in paragraph 190.

191. Defendants deny the allegations in paragraph 191.

192. Defendants deny the allegations in paragraph 192.

193. Defendants deny the allegations in paragraph 193.

194. Defendants deny the allegations in paragraph 194.

## COUNT IX

## DECLARATORY JUDGMENT

(by Le against Strauss)

195. Defendant Strauss realleges and incorporates the responses to preceding paragraphs 1–194 by reference.

196. Defendant denies the allegations in paragraph 196.

197. Defendant denies the allegations in paragraph 197.

198. Defendant denies the allegations in paragraph 198.

199. Defendant denies the allegations in paragraph 199.

200. Defendant denies the allegations in paragraph 200.

201. Defendant denies the allegations in paragraph 201.

## PRAYER FOR RELIEF

The section of the SAC titled "Prayer for Relief" sets forth the statement of relief requested by Plaintiffs to which no response is required. Defendants deny that Plaintiffs are entitled to any relief and request that the Court dismiss all claims with

16

prejudice and grant Defendants such further relief as the Court deems just and proper.

## AFFIRMATIVE AND AMPLIFYING DEFENSES

In further answer to the SAC, and as separate defenses or affirmative defenses thereto, Defendants assert the following affirmative defenses, without assuming the burden of proving any fact, issue, or element of a claim where such burden properly belongs to Plaintiffs. In addition to the affirmative defenses described below, Defendants specifically reserve all rights to assert additional affirmative defenses as additional information becomes available. Pursuant to Federal Rule of Civil Procedure 8(c), Defendants, without waiver, limitation, or prejudice, hereby asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

202. Plaintiffs' claims are barred by the applicable statutes of limitations, including, without limitation, Cal. Civ. Proc. Code §§ 337, 339, 343, et. al., in part, because Plaintiffs' claims accrued years ago when Plaintiffs were aware of Mr. Strauss launching and operating Neven FL.

## SECOND AFFIRMATIVE DEFENSE

203. Plaintiffs' claims are barred by the doctrine of laches, in part, because Plaintiffs' claims accrued years ago when Plaintiffs were aware of Mr. Strauss launching and operating Neven FL.

## THIRD AFFIRMATIVE DEFENSE

204. Plaintiffs' claims are barred by the doctrine of unclean hands, in part, because Mr. Le has attempted to ruin Defendants' company assets, including the goodwill associated with the NEVEN brand. Mr. Le is abusing the legal process now by having filed this frivolous lawsuit.

## FOURTH AFFIRMATIVE DEFENSE

205. Plaintiffs are barred, in whole or in part, from recovering any money because they would be unjustly enriched due, in part, to the fact that Defendants

17

have already compensated Plaintiffs for their contributions.

## FIFTH AFFIRMATIVE DEFENSE

206.  Plaintiffs' claims are barred because Plaintiffs waived any right to relief, in part, by failing to have a signed Operating Agreement and for allowing Mr. Strauss to continue to operate Neven FL since its inception.

## SIXTH AFFIRMATIVE DEFENSE

207.  Plaintiffs' claims are barred by the doctrines of estoppel and acquiescence because Plaintiffs waived any right to relief, in part, by failing to have a signed Operating Agreement and for allowing Mr. Strauss to continue to operate Neven FL since its inception.

## SEVENTH AFFIRMATIVE DEFENSE

208.  Plaintiffs' claims are barred to the extent that the ICA is an illegal, voidable, or uncertain contract purporting to grant ownership rights to Plaintiffs in Neven FL (a company and owner both located in Florida), as California has legal requirements for establishing companies and for conducting business in California. Further, upon information and belief, the ICA is voidable as being illegally prepared by a non-lawyer (*e.g.,* Nichole Ellis) who was practicing law without a license, and cannot be enforced against Defendants who were without legal representation.

## EIGHTH AFFIRMATIVE DEFENSE

209.  Plaintiffs' claims are barred to the extent that the ICA is an unconscionable contract to the extent that Plaintiffs required Mr. Strauss to invest significant time, money, and personal resources, and then demanded that he transfer ownership of Neven FL to Plaintiffs. Furthermore, Mr. Strauss was presented with a take it or leave agreement and was unable to consult with a lawyer.

## NINTH AFFIRMATIVE DEFENSE

210.  Plaintiffs' claims are barred to the extent that the parties' or Mr. Strauss entered into the ICA with mistaken beliefs regarding the scope of the ICA. Mr. Strauss would never have entered into the ICA if he knew he would be required to

invest his own time and money to create a company, and then be required to transfer and assign everything to LV.

### TENTH AFFIRMATIVE DEFENSE

211.    Plaintiffs' claims for conversion fail because Plaintiffs consented to Defendants' use of the alleged property on behalf of Neven FL.

### ELEVENTH AFFIRMATIVE DEFENSE

212.    Plaintiff LV's claim for breach of contract fails due to LV's ratification of Defendants' actions and when LV accepted compensation from Defendants.

### TWELTH AFFIRMATIVE DEFENSE

213.    Plaintiff LV's claim for breach of contract fails because LV breached the ICA, in part, by failing to compensate Mr. Strauss.

### THIRTEENTH AFFIRMATIVE DEFENSE

214.    Plaintiff LV's claim for breach of contract fails because compensation is a material term, and it is absent from the agreement. California law requires all material terms must included in a reasonably definite manner, and the absence of compensation renders the ICA uncertain and unenforceable.

### FOURTEENTH AFFIRMATIVE DEFENSE

215.    Plaintiff LV's claim for breach of contract fails because it is uncertain and indefinite, since the intention of the parties in material particulars cannot be ascertained, which renders the ICA void and unenforceable.

### RESERVATION OF RIGHTS

The foregoing affirmative defenses are raised by Defendants without waiver of any other defenses that may come to light during discovery in this case or otherwise. Defendants hereby reserve the right to amend or supplement their Answer to assert any other related defenses as they become available.

### COUNTERCLAIMS

Defendant Neven Eyewear, LLC (hereinafter "Counterclaimant" or "Neven FL") incorporates by reference Defendants' above responses as if fully set forth

herein. In accordance with Rule 13 of the Federal Rules of Civil Procedure, Counterclaimant asserts the following counterclaims against Plaintiffs:

## PARTIES

216.    Counterclaimant is a Florida limited liability company created and registered in Florida on or about August 24, 2020. Neven FL has been solely owned by Defendant Jonathan Strauss since its inception.

217.    On information and belief, Counter-Defendant Neven Eyewear, LLC ("Neven NV") is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business at 5940 S. Rainbow Blvd. Ste. 400 # 84085, Las Vegas, Nevada 89118.

218.    On information and belief, Counter-Defendant Le Ventures, LLC ("LV") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 8605 Santa Monica Blvd #84045, Los Angeles, California 90069. On information and belief, Counter-Defendant LV formed and directs the activities of Neven NV. On information and belief, Counter-Defendant LV has control over Neven NV.

219.    On information and belief, Counter-Defendant Khoi Le is a resident of the State of Nevada. On information and belief, he formed, is the manager of, and directs the activities of LV. On information and belief, Mr. Le directs the activities of Neven NV. He has control over LV and Neven NV. Mr. Le signed Neven NV's U.S. Trademark Application Ser No. 97034147 for registration of the mark NEVEN EYEWEAR that is identical to, and relies on a specimen showing, Neven FL's use of Neven FL's senior NEVEN EYEWEAR mark.

## JURISDICTION AND VENUE

220.    Counterclaimant realleges and incorporates the preceding paragraphs by reference.

221.    These Counterclaims seek cancellation of a federally registered trademark under 15 U.S.C. § 1119 for fraud in the procurement of a federal

trademark in violation of 15 U.S.C. § 1120 and assert a claims of trademark infringement and false designation/false endorsement under 15 U.S.C. §§ 1114 & 1225.

222. The Court has subject matter jurisdiction over Counterclaimants' claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

223. Mr. Le, LV, and Neven NV have consented to the personal jurisdiction of this Court at least by commencing their action in this District.

224. To the extent the action initiated by Counter-Defendants is adjudicated in this District, venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and (c).

## FACTUAL BACKGROUND

### Introduction

225. Mr. Strauss owns 100% of Neven FL, including all its intellectual property.

226. Mr. Strauss was not an employee of LV, did not work exclusively for LV, and did not have a fiduciary duty to LV.

227. Although Mr. Strauss performed various defined services as an independent contractor for LV and LV's clients, Mr. Strauss was allowed to pursue his own business interests.

228. Mr. Strauss created Neven FL, he invested his own money into the business, and he has been exclusively running the company since its inception, as Mr. Le has always known.

229. Although Mr. Le and/or LV contributed some capital resources and labor, Mr. Strauss later compensated Mr. Le and LV for these contributions.

230. At no point during the parties' relationship did Mr. Le ever claim ownership of Neven FL. He never communicated to Mr. Strauss that LV owned Neven FL. He never asserted pursuant to any independent contractor agreement ("ICA") that LV owned Neven FL.

231. Mr. Le could not have in good faith asserted that the ICA governed ownership of Neven FL, because the ICA was expressly limited in scope to apply to services performed by independent contractors, not the creation, operation, or ownership of a separate company—*i.e.,* Neven FL. *See* SAC at Ex. C.

232. The services governed by the ICA were specified in Exhibit A to the ICA: "Contractor duties will vary, including, but not limited to: advising Company of potential client, partner, and/or contractor leads, accepting service calls on behalf of Company from clients and routing the details of those calls to the correct developer for resolution, project management, advertising and sales."

233. None of the above-identified "services" included Mr. Strauss launching his own company and then at some point and time in the future, handing over the company to Mr. Le or LV.

234. Mr. Le was fully aware that Mr. Strauss created, controlled and operated Neven FL since its inception.

235. Mr. Le admitted in writing that he did not control Neven FL.

236. Mr. Le admitted in writing that he wanted Mr. Strauss to execute written agreements rather than continue operating based on verbal discussions.

237. Mr. Le admitted there was no agreement governing ownership of Neven FL or its intellectual property, but merely verbal discussions.

238. If Mr. Le honestly believed the ICA granted him ownership rights in Neven FL or its intellectual property, Mr. Le would have said so instead of trying to convince Mr. Strauss to memorialize verbal discussions into written agreements.

239. During the parties' relationship, Mr. Le never claimed he owned 100% of Neven FL. He admitted in writing that he did not own 100% of Neven FL, but he wanted Mr. Strauss to put a part of Neven FL under LV.

240. Mr. Le and Mr. Strauss discussed ownership of their respective companies – *i.e.,* LV and Neven FL, respectively – for years. Mr. Le admitted they had verbal discussions but never came to any agreement on their respective

22

ownership percentages of LV and Neven FL.

241.    Mr. Le desired to own a part of Neven FL based on his and LV's contributions to Neven FL, and he communicated these desires to Mr. Strauss. Mr. Le proposed owning 50% of Neven FL, but Mr. Strauss rejected the offer.

242.    Mr. Strauss has never relinquished any part of his 100% ownership of Neven FL. Although he and Mr. Le had many verbal discussions over the years, they never came to an agreement regarding the percentages of ownership in Neven FL and LV.

### Counterclaimant Neven FL's NEVEN brand

243.    Neven FL markets and sells quality, stylish eyewear to consumers at an affordable price under its NEVEN brand. Neven FL exclusively operates the NEVEN brand.

244.    Since its founding, Neven FL has invested significant time, effort, and money in advertising and selling its eyewear and related products under its family of NEVEN marks, including the name NEVEN EYEWEAR. As a result of these efforts, the NEVEN brand has become well known in the eyewear industry, earning recognition and goodwill among consumers in the online marketplace and on social media, and its brand has been a tremendous success.

245.    Through its online store hosted by e-commerce vendor Shopify at the domain www.neveneyewear.com, Neven FL receives approximately 7,000 orders for its products per week. Neven FL also promotes its products through its social media accounts on platforms hosted by Meta, including Facebook and Instagram, where Neven FL has over 130,000 followers. Through its Facebook account, Neven FL engages with approximately 20 million people per month. Neven FL dedicates considerable expense to advertising through Meta platforms, which account for approximately 95% of Neven FL's marketing.

246.    Neven FL operates out of Melbourne, Florida, where it has 18 employees. Neven FL ships its products to customers out of its facility in Melbourne.

**Development and Adoption of NEVEN Trademarks and Logos**

247. The NEVEN brand began with Tribe Eyewear, LLC ("Tribe"), a Florida limited liability company, which was founded by Mr. Strauss, along with a colleague, John Muller, on December 16, 2019.

248. On May 1, 2020, following a decision to rename the company's eyewear brand to NEVEN, Mr. Strauss submitted an application (Ser. No. 88897585), on behalf of Tribe, to register the trademark $N \approx V \approx N$ (the "Neven and Design Mark") with the United States Patent and Trademark Office ("USPTO") in International Classes 009 and 025 for use in connection with eyewear, namely sunglasses and eyeglasses, among other goods.

249. Neven FL was formed shortly thereafter by Mr. Strauss, along with Mr. Muller. Mr. Muller has since left the company, and Mr. Strauss is now the sole owner and Chief Executive Officer of Neven FL.

250. Neven FL has been selling eyewear and related products and services using its NEVEN and NEVEN EYEWEAR marks continuously since 2020. Mr. Le was placed on notice of Neven FL and the product sales at least as early as 2020.

251. On April 20, 2021, the USPTO issued a certificate of registration for the Neven and Design Mark, U.S. Reg. No. 6330350 (the "'350 Registration").

252. Before its formal dissolution, Tribe assigned all rights, title, and interest in and to the Neven and Design Mark and the '350 Registration to Neven FL on September 21, 2021 (the "Trademark Assignment"). The Trademark Assignment, is recorded with the USPTO, and as a result, Neven FL owns the Neven and Design Mark and the '350 Registration.

253. Neven FL is also the owner of pending U.S. Trademark Application Ser. No. 98528994 for the mark NEVEN EYEWEAR in International Classes 009, 016, 025, and 035 for use in connection with eyewear, glasses, and sunglasses, among other goods and services (the "'994 Application"). Neven FL owns numerous other pending trademark applications, which in addition to the '350 Registration and

24

the '994.

### Relationship with LV, Neven NV, and Mr. Le

254. Prior to March 2024, Mr. Strauss worked as an independent contractor for LV. Mr. Strauss was not an employee of LV or Mr. Le and had no obligation under the ICA to work solely for LV clients.

255. Similarly, Mr. Strauss was permitted to pursue business opportunities apart from LV and had no obligation to include LV or Mr. Le in those opportunities under the ICA.

256. Separate from Mr. Strauss' work for LV, Mr. Strauss founded Neven FL and developed the NEVEN trademarks and brand.

257. At no point in time has Mr. Le, LV, or Neven NV ever had any membership interest or ownership percentage of Neven FL. Mr. Le was never added to the Neven FL registration or any of its governing documents. Relatedly, Mr. Le never created, drafted, submitted, or delivered proposed governing documents to Mr. Strauss relating to ownership in Neven FL.

258. Although Mr. Le provided limited capital and labor (*i.e.,* LV independent contractors) for the benefit of Neven FL, pursuant to verbal discussions the intent was for Neven FL to repay LV when Neven FL was profitable.

259. In or around 2021 or early 2022, after Neven FL was profitable, and consistent with prior verbal discussions, Mr. Strauss compensated LV, and LV performed programming and advertising data tasks for Neven FL. In return for those services, as well as prior contributions by LV, Neven FL paid LV and Mr. Le more than $750,000.

260. In March 2024, Mr. Strauss and Neven FL terminated their relationship with LV. Additionally, Neven FL learned that LV and Mr. Le were subcontracting their responsibilities to Neven FL to low-quality programmers who were failing to meet deadlines and complete tasks efficiently.

**Counter-Defendants' Fraud on the USPTO**

261. Mr. Le, through his company 37 Ventures, LLC (a shell company he manages and controls), established an LLC in Nevada ("Neven NV"), on October 13, 2021, bearing Neven FL's exact name: Neven Eyewear, LLC.

262. Upon information and belief, Neven NV does not have any eyewear business, sell any goods or services, or own, operate, or maintain any website or social media accounts in connection with any eyewear business.

263. Neven NV owns no trademark rights, as confirmed by the Court's dismissal of Neven NV's frivolous claims for trademark infringement.

264. Neven NV has no relationship or agreements with Neven FL or Mr. Strauss.

265. Unbeknownst to Neven FL, Counter-Defendant Le had signed and submitted, on behalf of Neven NV, an application (Ser No. 97034147) to register the mark NEVEN EYEWEAR for use in connection with eyewear, namely eyeglasses and sunglasses, among other goods.

266. On the filing date, Counter-Defendants had actual knowledge of Neven FL's ownership of Counterclaimant's NEVEN formative marks, including Counterclaimant's Neven and Design Mark and NEVEN EYEWEAR.

267. When Counter-Defendant Le signed this application, he falsely declared under oath that, to the best of Neven NV's knowledge, no other party had rights in the applied-for mark or a mark confusingly similar thereto, when in fact Counter-Defendants knew that Neven FL had prior rights in the NEVEN EYEWEAR name and the Neven and Design Mark.

268. Counter-Defendants filed the trademark application under Section 1(a) of the Lanham Act, 15 U.S.C. § 1051. Accordingly, as part of the trademark application process, Neven NV was required to submit a specimen demonstrating its use of the applied-for NEVEN EYEWEAR mark.

269. The specimen that Counter-Defendants submitted in connection with

26

this application (Ser No. 97034147) was a screenshot of *Counterclaimant's* website, showing *Counterclaimant's* use of *Counterclaimant's* NEVEN formative marks, including Counterclaimant's Neven and Design Mark and NEVEN EYEWEAR. A copy of the specimen submitted by Counter-Defendants in support of their application to register NEVEN EYEWEAR was taken from a webpage of Counterclaimant's neveneyewear.com website.

270. On the filing date, Counter-Defendants knew that the website submitted as the required specimen of use was Neven Eyewear's website and not a use by any Counter-Defendant.

271. Neven FL never authorized any Counter-Defendant to register or apply to register any marks using or incorporating Neven FL's name or marks or relying on any materials from its website. At no time have any trademark rights in any of Neven FL's marks been assigned to any Counter-Defendant. Further, Counter-Defendants have no basis to claim any of Neven FL's website or rights to Neven FL's marks or any mark containing or confusingly similar with Neven FL's marks. Nevertheless, Neven NV registered the trademark NEVEN EYEWEAR, which it did not and does not own, and misappropriated and misrepresented Neven NV's use of Neven FL's marks as its own.

272. Counter-Defendants' declarations in the application were false, made knowingly and with the intent to deceive the USPTO for the purpose of obtaining a trademark registration for the NEVEN EYEWEAR mark.

273. The USPTO accepted Counter-Defendants' declarations and issued a certificate of registration of the NEVEN EYEWEAR mark (U.S. Reg. No. 6883673 (the "'673 Registration")) to Neven NV on October 25, 2022.

274. The '673 Registration is invalid and void *ab initio*, because Neven NV did not own the NEVEN EYEWEAR mark as of the filing date of the application or anytime thereafter.

275. Neven NV's registered mark is confusingly similar to Neven FL's

27

Neven and Design Mark and NEVEN formative marks, including NEVEN EYEWEAR. In fact, the NEVEN portion of both parties' marks is identical, and the EYEWEAR portion of Neven NV's mark has been disclaimed. The parties' marks are used or registered on identical goods. Consumers exposed to Neven NV's NEVEN EYEWEAR mark are likely to believe that Counter-Defendants' goods are from the same source as Neven FL, or are sponsored, affiliated, or endorsed by Neven FL. Counter-Defendants' use of the NEVEN EYEWEAR mark is likely to cause confusion amongst purchasers, with Neven FL's marks, resulting in damage to Counterclaimant.

276. Neven FL has priority with respect to the marks NEVEN and NEVEN EYEWEAR for Neven FL's goods by virtue of Neven FL's use in commerce prior to any use, filing, or registration of Neven NV's mark.

277. On information and belief, Counter-Defendants have never used the NEVEN EYEWEAR mark in commerce in connection with any of the goods covered by the registration.

278. After discovering that Counter-Defendants had fraudulently obtained a NEVEN EYEWEAR trademark by misrepresenting Neven FL's use of the mark in commerce as its own, Neven FL filed a petition to cancel the trademark on May 21, 2024.

**Counter-Defendant's Retaliatory and Tortious Conduct**

279. After Neven FL terminated its relationship with Mr. Le and LV, Mr. Le became hostile toward Mr. Strauss and Neven FL. Since Mr. Le never obtained any ownership in Neven FL or any of its intellectual property, he decided to try to destroy the company and the brand. His mentality was, in essence, "if I cannot own it, then I will try to kill it."

280. On May 21, 2024, Counter-Defendant Le attempted to hijack Neven FL's Shopify account and take over Neven FL's online store. Misrepresenting himself as owner of Neven FL to its vendor Shopify, Mr. Le attempted to change the

28

email address of the contact for Neven FL's Shopify account to an email address only accessible by Mr. Le. This attempt was blocked by Shopify's verification protocols, which demonstrate that Mr. Strauss, and not Mr. Le, is the rightful owner of Neven FL and its Shopify store.

281. On May 21, 2024, Neven FL received a notice from Shopify that Mr. Le had petitioned to takedown Neven FL's online store on Shopify, asserting that Neven FL's store infringed Neven NV's '673 Registration. Shopify indicated that it would remove Neven FL's store, unless a response was received by May 23, 2024.

282. Because all of Neven FL's sales are processed through its Shopify account, the monetary and reputational damage to Neven FL resulting from even temporary downtime of its entire e-commerce business would be catastrophic. Accordingly, Neven FL, through counsel, promptly contacted Mr. Le's counsel and requested that Mr. Le withdraw the petition. Counter-Defendants' counsel never responded, and the petition was not withdrawn.

283. The same day, May 21, 2024, Neven FL's counsel submitted a response to Shopify's notice, explaining that Mr. Le's petition was fraudulent and based on an invalid trademark registration subject to a pending cancellation proceeding. Upon receiving this response, Shopify terminated Mr. Le's petition.

284. On June 4, 2024, Neven FL's counsel received a letter from Mr. Le's counsel in Florida baselessly claiming that the Mr. Le, LV, and Neven NV are the rightful owners of Neven FL and the NEVEN brand, accusing Neven FL of committing civil theft of NEVEN trademarks, Neven FL's Shopify account, and the neveneyewear.com domain name, among other property. Counter-Defendants demanded $30 million, and that Neven FL turn over its Shopify account to Counter-Defendants, among other demands.

285. Neven FL's counsel received a second correspondence from Counter-Defendants' Florida counsel, dated May 28, 2024, which again baselessly claims that the Counter-Defendants are the rightful owners of Neven FL's business and

intellectual property. Asserting their fraudulently obtained '673 Registration, Counter-Defendants demanded that Neven FL cease and desist use of the NEVEN EYEWEAR mark, the Neven and Design Mark, the name NEVEN, or any variant thereof, and Neven FL's applied-for trademarks, threatening legal action against Neven FL.

286.   When the above tactics failed, Counter-Defendants decided to attack Neven FL's online advertising and social media platforms. On June 12, 2024, Counterclaimant received notice that Counter-Defendants, again asserting the invalid, fraudulently obtained '673 Registration, had filed another trademark infringement complaint against Neven FL, this time with its online advertising vendor, Meta. As a result of Counter-Defendants' complaint, Meta removed and disabled Neven FL's Facebook and Instagram advertisements and accounts. Neven FL's accounts were shut down for approximately 24 hours before counsel for Neven FL was able to prove to Meta that Counter-Defendants were relying on fraudulent trademark rights. Thereafter, the Meta accounts were reinstated.

287.   After Counter-Defendants' attempts to destroy the Neven FL company and NEVEN brand failed, they decided to sue Counterclaimant instead.

288.   Counter-Defendants initiated this action, again asserting trademark rights in the NEVEN Trademarks, which they do not own or have any legitimate rights in. Indeed, the Court dismissed Counter-Defendants' frivolous trademark infringement claims (*see* Dkt. 52 at pp. 12–14), and Counter-Defendants have not re-pled similar claims in the SAC.

289.   Counter-Defendants' repeated assertions of its invalid, fraudulently obtained trademark to threaten Neven FL with legal action and to attempt to take over and/or take down Neven FL's business and aspects thereof have caused and, unless enjoined, will continue to cause monetary and reputational harm to Neven FL.

290.   As a result of Counter-Defendants' conduct alleged herein, Neven FL

30

has suffered damages, including loss of business, profits, and goodwill.

## FIRST CLAIM FOR RELIEF

**(Trademark Infringement and False Designation/False Endorsement, 15 U.S.C. §§ 1114 & 1225)**

291.   Counterclaimant realleges and incorporates the preceding paragraphs by reference.

292.   Counterclaimant owns all rights to the NEVEN trademarks, including Neven and Design Mark. Counterclaimant is the only company authorized to use NEVEN intellectual property in commerce.

293.   Counterclaimant is aware that Counter-Defendant Le has and continues to use the Neven and Design Mark on a website protectcommerce.com. Counterclaimant has not authorized Mr. Le to use any NEVEN trademarks.

294.   On May 28, 2024, counsel for Counterclaimant sent a letter to Mr. Le demanding that he cease-and-desist from using the Neven and Design Mark.

295.   As of today's date, Mr. Le has continued to promote the Neven and Design Mark on the website protectcommerce.com and is therefore unfairly profiting from the use of Counterclaimant's intellectual property and goodwill.

296.   Consumers viewing the website protectcommerce.com would mistakenly assume that Counterclaimant approves of such use.

297.   Mr. Le, upon information and belief, is operating the website protectcommerce.com through a shell company Protect, Inc., which shares the identical address as the shell company Neven NV.

298.   Mr. Le's conduct is intentional and willful, and Counterclaimant is entitled to actual damages and disgorgement of profits from the website.

## SECOND CLAIM FOR RELIEF

**(Cancellation of U.S. Trademark Reg. No. 6,883,673 due to Fraudulent Procurement)**

299.   Counterclaimant realleges and incorporates the preceding paragraphs

by reference.

300.    Counterclaimant is likely to be damaged by Counter-Defendant Neven NV's use of the '673 Registration, use of which is likely to cause confusion with Counterclaimant's Neven and Design Mark and other NEVEN formative marks, including NEVEN EYEWEAR.

301.    Counter-Defendant Neven NV did not own the NEVEN EYEWEAR mark on the filing date of the application for the '673 Registration. Accordingly, the '673 Registration is void *ab initio*, pursuant to Section 1 of the Lanham Act, 15 U.S.C. § 1051. In addition, Counter-Defendant Neven NV knowingly made false statements to the USPTO about its ownership and use of the applied-for mark with the intent to deceive the USPTO and to obtain a trademark registration to which it is not entitled. Counter-Defendant Neven NV's application for the '673 Registration contained a sworn declaration in which the Counter-Defendant Neven NV, through Mr. Le, affirmed, among other things, that: (i) the Counter-Defendant Neven NV "is the owner of the trademark/service mark sought to be registered;" and (ii) to the best of Counter-Defendant Neven NV's "knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive." Counter-Defendant Neven NV's declaration also contained the following statement: The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or submission or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

302.    On the filing date of the application for the '673 Registration, Counter-Defendant Neven NV had knowledge that Neven FL owned and had prior rights in

32

the Neven and Design Mark and NEVEN formative marks, including NEVEN EYEWEAR. In addition, Counter-Defendant Neven NV knew that the website that Mr. Le submitted as a specimen of their purported use was Counterclaimant's website and not a use by Counter-Defendants.

303. On information and belief, Counter-Defendant Neven NV's declarations in obtaining the '673 Registration were fraudulent and knowingly false. Counter-Defendant Neven NV's declarations were material to the USPTO's decision to issue the '673 Registration. The USPTO accepted Counter-Defendant Neven NV's declarations and approved the application underlying the '673 Registration for publication and registration.

304. The USPTO should have refused registration based on Counterclaimant's senior marks, but given that, by Counter-Defendant Neven NV's design, Neven FL and Neven NV share the same name, the USPTO may have believed that the senior user and applicant were the same entity.

305. Accordingly, Counter-Defendant Neven NV committed fraud on the USPTO to obtain the '673 Registration, in violation of Section 14 of the Lanham Act, 15 U.S.C. § 1064. Cancellation, under 15 U.S.C. § 1119, of '673 Registration is warranted.

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaimant respectfully requests the following relief:

1. Dismissal of the SAC with prejudice;

2. That Plaintiffs/Counter-Defendants take nothing by their SAC;

3. Judgement that Plaintiffs/Counter-Defendants do not own any of the trademarks asserted in the SAC;

4. A finding that Defendants and Counterclaimant are the prevailing party under the ICA and award to them attorneys' fees, and costs, and pre- and post-judgment interest in the highest amount allowable by law or contract;

5. Damages sufficient to compensate Counterclaimant for Mr. Le's

misuse of the NEVEN intellectual property, and treble damages in the form of disgorgement to deter Mr. LE from future harm to the goodwill of Counterclaimant's intellectual property.

6.    Such further relief as the Court determines to be just and proper.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Counterclaimant demands a trial by jury of all issues triable by right of jury.

Dated: February 6, 2025

*/s/Scott P. Shaw*
Scott P. Shaw (SBN 223592)
SShaw@Merchantgould.com
MERCHANT & GOULD P.C.
8383 Wilshire Blvd., Suite 935
Beverly Hills, CA 90211
Telephone: (949) 330-0202

Brian J. Abergel (Admitted PHV)
Babergel@TPAlegal.com
PEACOCK, & ABERGEL, P.L.L.C.
304 South Harbor City Blvd. Ste 201
Melbourne, FL 32901
Telephone: (321) 255-5501

*Attorneys for Defendants*

34